UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| WILLIAM L. GLADNEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 12-42-GFVT |
| | ) | |
| v. | ) | |
| | ) | |
| GARY MEHLER, et. al, | ) | **MEMORANDUM** |
| | ) | **OPINION AND ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

William L. Gladney is a prisoner incarcerated at the United States Penitentiary in Atwater, California.  Proceeding without counsel, Gladney filed a civil rights complaint against federal officers of the Bureau of Prisons ("BOP") pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).  [R. 1, 4]  Gladney alleges that the defendants failed to protect him from an assault by another inmate; wrongly found him guilty of fighting with that inmate; and then placed him in a cell for three days that lacked adequate accommodations in light of his injuries.

Following service of process, the defendants filed a motion to dismiss the complaint, or in the alternative, for summary judgment [R. 18] to which Gladney has filed a response. [R. 22] This matter is therefore ripe for determination.

**I**

Gladney was incarcerated at the United States Penitentiary - McCreary in Pine Knot,

Kentucky, between April 21, 2008, and November 18, 2010. [R. 20, p. 4] On August 4, 2010, while Gladney was in the dining room during the lunch hour, inmate Ralph Graham attacked him from behind and punched him in the head. Gladney responded by throwing Graham to the ground and repeatedly punching him in the head. Prison staff intervened and stopped the fight. Gladney was examined at the prison's Health Services Unit, but appeared largely unharmed except for pain in his right shoulder. [R. 20-1, pp. 54-55] Gladney was placed in the Special Housing Unit ("SHU"), but was released back to his housing unit by 3:30 p.m. the same day. Prison staff issued Incident Report 2049412 to Gladney which charged him with Fighting with Another Person, a Code 201 offense. [R. 20-1, p. 50]

Graham had also been placed in the SHU after the fight, but he was released back into his housing unit - that he shared with Gladney - at approximately 2:12 p.m. the next day, August 5, 2010. At or around 2:05 p.m.,[1] officers found Gladney and Graham fighting again in their unit, each hitting the other in the face and torso. Graham also appears to have stabbed Gladney with a makeshift knife or shiv. Prison staff again interceded to stop the fight.

The medical examination of Gladney indicated that he had several lacerations in his left hand, upper lip, and left ear, as well as three puncture wounds in his left shoulder. These wounds were either sutured shut or closed with tissue adhesive. When the x-ray of Gladney's left hand revealed a fracture, he was taken to the Scott County Hospital for treatment. [R. 20-1, pp. 63-65]

---

[1] The defendants do not attempt to explain how Graham could be fighting with Gladney in Unit 4A at 2:05 p.m., seven minutes *before* Graham was allegedly released from the SHU at 2:12 p.m. [R. 20, p. 8] Because Officer Hudson's incident report [R. 20-1, p. 59] and the Health Services Clinical Encounter notes [R. 20-1, p. 63] are roughly consistent when they indicate that the altercation took place at 2:01 or 2:10 p.m. that day, the Court assumes that Gladney was actually released from the SHU at some point before 2:12 p.m. that day, the time that BOP staff stated was the time of his release in his "Inmate History - Quarters" record. [R. 20-1, p. 66]

A splint was applied to the hand, and Gladney was returned to the prison the same day.  Prison staff issued Incident Report 2050297 to Gladney which again charged him with Fighting with Another Person.  [R. 20-1, p. 59]

Upon his return from the hospital, Gladney was placed back in the SHU, where he remained for three days until August 8, 2010.  Gladney indicates that his cell had no bed, no toilet, and no running water. Once he was released from the SHU, on August 9, 2010, the Unit Disciplinary Committee held a brief hearing on both charges, but referred both Incident Reports to the Disciplinary Hearing Officer ("DHO")  for decision.  [R. 20-1, pp. 50, 59]

On September 1, 2010, the DHO Gary Mehler held hearings on both charges.  With respect to both altercations, Gladney expressly admitted that he fought with Graham, but contended that Graham had attacked him first and that he had no choice but to defend himself. Nonetheless, on October 28, 2010, the DHO issued Reports finding Gladney guilty of both charges, and for each sanctioned him with placement in disciplinary segregation for 15 days and the loss of commissary privileges for 90 days.  Both of the DHO's Reports were delivered to Gladney on November 9, 2010.  [R. 20-1, pp. 47-49; R. 20-1, pp. 56-58]

Gladney remained at U.S.P. - McCreary until November 18, 2010, at which time he was transferred out of the prison.  [R. 20-1, pp. 2, 12]  Following approximately one week at the Federal Transfer Center in Oklahoma City, Oklahoma, Gladney was transferred to the United States Penitentiary in Victorville, California.  [R. 20-1, pp. 2, 12]  Gladney remained at that facility for approximately one month, until December 21, 2010, when he was transferred to U.S.P. -Atwater.  [R. 20-1, pp. 2, 12]

When Gladney arrived at Atwater, he asked his unit staff for copies of his "shots" (DHO Reports), but staff apparently indicated that not all of Gladney's personal property, including his

documents, had arrived at the prison. When the documents did arrive, they were stamped, incorrectly, as exempt under the Freedom of Information Act, and were thus not provided to Gladney pursuant to prison policy. [R. 20-1, p. 25]

Gladney did not challenge his disciplinary conviction for the August 4, 2010, lunch room fight until on May 3, 2011, six months after the DHO Report was delivered to him on November 9, 2010, when he filed Administrative Remedy No. 635853-R2 with the Western Regional Office ("WRO"). This grievance, and a series of subsequent grievances Gladney filed with WRO and the Central Office, were all rejected as untimely. [R. 20, p. 4-6]

On June 6, 2011, Gladney filed an Inmate Request to Staff asking that unit staff provide him with a letter explaining that he did not receive and was unable to obtain copies of his DHO Reports when he arrived at USP-Atwater. [R. 20-1, p. 25] On October 25, 2011, Gladney's Case Manager, L. Taitano, authored a memorandum confirming the delay and requesting that Gladney's untimely appeal be considered in light of it. [R. 20-1, p. 27]

WRO acquiesced, and addressed the merits of Gladney's challenge to his disciplinary conviction on November 28, 2011, in Administrative Remedy No. 638329-R3. The Regional Director found that the evidence supported the charge, that the DHO had substantially complied with the BOP's regulations in conducting the hearing, and denied relief. [R. 20, p. 6; R. 20-1, p. 23] On December 19, 2011, the Central Office affirmed the denial of Gladney's challenge to his conviction for Incident Report 2049412. [R. 20, p. 7; R. 20-1, p. 30]

Gladney challenged his disciplinary conviction for the August 5, 2010, fight when he filed Administrative Remedy No. 2050297. However, the defendants indicate only that this document, which is not dated, "was found in the Regional Office." [R. 20, p. 6 n.2; R. 20-1, p. 24] The record is unclear when the document was filed, whether it was filed with WRO or the

Central Office, or whether it was an independent appeal or was included as part of a pre-existing appeal by Gladney with respect to Administrative Remedy No. 638329.

Gladney did not file any independent administrative remedies asserting that BOP officers failed to protect him from the assault, or that the conditions of his cell in the SHU from August 5, 2010, to August 8, 2010, were unacceptable. [R. 20, p. 15; R. 20-1, p. 6] The only place these allegations appear to have been made to the BOP is in the undated document titled "IN RE: I.R.N.O. #2050297." [R. 20-1, p. 24] In that document, Gladney appears primarily to be challenging his conviction for the August 5, 2010, fight, and makes only a passing mention that "staff negligently placed the assailant and I back in the same Unit ..." This document appears to have been filed with the Central Office after what Gladney contended was the lack of a timely response by WRO to an appeal of the DHO's sanction for this incident report. Notably, the Regional Director's November 28, 2011, response [R. 20-1, p. 23] to the one claim WRO did review on the merits makes no mention of these allegations by Gladney, and thus it is unlikely he ever asserted them before the WRO.

The Central Office appears to have received and reviewed this document when it substantively reviewed Gladney's appeal regarding his disciplinary conviction for the August 4, 2010, fight, as it noted that "[y]ou claim you were never the aggressor, and due to staff's negligence you were assaulted a second time. Furthermore, you indicate the conditions in segregation subjected you to cruel and unusual punishment." [R. 20-1, p. 30] However, the Central Office refused to consider these claims, presented for the first time on appeal: "A review of documentation related to your allegations that staff's negligence resulted in a second assault and the conditions of segregation subjected you to cruel and unusual punishment will not be addressed in this response. We would be remiss as to not allow the Warden and Regional

Director the opportunity to address these concerns accordingly."[2]  [R. 20-1, p. 30]  The Central Office denied Gladney's appeal on September 14, 2012.

After WRO had denied Gladney's appeal but well before the Central Office had reached its decision, on February 22, 2012, Gladney filed his complaint by delivering it to prison authorities for mailing under *Houston v. Lack*, 487 U.S. 266 (1988).  Gladney's complaint asserts four claims.  His first and second claims assert that DHO Mehler's decisions finding him guilty of fighting on August 4, 2010, and on August 5, 2010, respectively, violated his right under the Fifth Amendment to a fair and impartial decisionmaker because it was clear that the other inmate attacked him first and that he was merely defending himself.  [R. 1, pp. 2, 3]  Gladney's third claim contends that Unit Manager Rebecca Woods and Counselor William Wood failed to protect him from the second assault in violation of his rights under the Eighth Amendment because they were aware of Graham's hostility towards him after the first fight but nonetheless permitted Graham to be released back into the housing unit he shared with Gladney.  [R. 1, p. 3]  Gladney's fourth claim asserts that SHU Lt. Terry Baker violated his rights under the Eighth Amendment when, after he returned from the hospital for treatment, on August 5, 2010, Baker placed him in a cell for three days that did not have running water, a toilet, or a bed.  [R. 1, pp. 3-4]  The Court will consider each of these claims in turn.

## II

The Court must treat the defendants' motion to dismiss the complaint as a motion for summary judgment under Rule 56 because they have attached and relied upon documents and

---

[2] While an appeal from a disciplinary sanction must be filed initially at the regional level, 28 C.F.R. § 542.14(d)(2), a grievance regarding staff conduct or prison conditions must be filed initially at the institution.  28 C.F.R. § 542.14(c)(4).

declarations extrinsic to the pleadings in support of it.  Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).  A motion under Rule 56 challenges the viability of the another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).  If the moving party demonstrates that there is no genuine dispute as to any material fact and that she is entitled to a judgment as a matter of law, she is entitled to summary judgment.  *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).

   The moving party does not need her own evidence to support this assertion, but need only point to the absence of evidence to support the claim.  *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005).  The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remain for trial.  *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts.").

   The court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor.  *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005).  The court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  If the applicable substantive law requires the responding party to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of

that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

### A.   Incident Report No. 2049412

Gladney's first claim is that DHO Mehler violated his Fifth Amendment right to a fair and impartial decisionmaker by finding him guilty of fighting with Graham on August 4, 2010, as charged in Incident Report No. 2049412, because it was clear that he was merely defending himself. [R. 1, p. 2]

The defendants contend that Gladney has failed to state a claim upon which relief may be granted and that therefore they are entitled to judgment as a matter of law. In his complaint, Gladney contends that DHO Mehler found him guilty of fighting notwithstanding clear evidence that Graham had attacked him first. These facts, Gladney contends, show that Mehler was clearly biased in violation of his rights to due process under the Fifth Amendment. [R. 4, p. 4]

Gladney's claim fails as a matter of law. It is well established that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. *Lasko v. Holt*, 334 F. App'x 474, 476 (3d Cir.2009). Rather, to demonstrate bias, the prisoner must show that the hearing officer was "personally or substantially involved in the circumstances underlying [the] charge." *Greer v. Hogston*, 288 F. App'x 797, 799 (3d Cir. 2008); *Davis v. Zuercher*, No. 7:08-CV-207-KKC, 2009 WL 585807, at *5 (E.D. Ky. Mar. 6, 2009). Gladney makes no allegation that DHO Mehler was personally involved in either the conduct that resulted in the issuance of the incident report or in the ensuing investigation, and thus his allegations fail to state a claim as a matter of law.

Nor does Gladney's contention that he was fighting merely to defend himself necessarily evidence bias when DHO Mehler found him guilty of fighting. Gladney admitted that he was

fighting with Graham; the reporting officer stated that Gladney both threw Graham to the ground and repeatedly punched him, acts unnecessary for self defense; and there is no indication that Gladney made any effort to escape from Graham or otherwise took action to avoid physical confrontation with him.  Courts have generally rejected challenges to disciplinary convictions for fighting with another inmate on grounds of self-defense.  *Cf. Allen v. Schultz*, No. CV-F-05-05-AWI, 2006 WL 2038036, at *6-7 (E.D. Cal. July 18, 2006).

      B.      **Incident Report No. 2050297**

Gladney's second claim is that DHO Mehler violated his Fifth Amendment right to a fair and impartial decisionmaker by finding him guilty of fighting with Graham on August 5, 2010, as charged in Incident Report No. 2050297, because it was again clear that he was merely acting in self defense. [R. 1, p. 3]

The defendants first argue that Gladney failed to properly exhaust his administrative remedies with respect to this claim. [R. 20, p. 16]  As noted above, Gladney did not file any appeal with the regional office challenging this disciplinary sanction.  Instead, it appears that Gladney attempted to challenge this disciplinary sanction by including his claims regarding it with his Central Office appeal regarding Incident Report No. 2049412. [R. 20-1, p. 24]

However, proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  Here, Gladney filed his challenge to his second disciplinary conviction at the wrong level, because an appeal from a disciplinary sanction must be filed initially at the regional level, 28 C.F.R. § 542.14(d)(2), not with the Central Office.  In addition, he improperly attempted to combine his challenge with his challenge to his first disciplinary conviction.  28

C.F.R. § 542.14(c)(2) ("For DHO and UDC appeals, each separate incident report number must be appealed on a separate form."). Because "*Woodford* makes clear that prisoners cannot satisfy the PLRA's exhaustion [requirement] by filing an untimely or otherwise procedurally defective administrative grievance," *Brewer v. Corrections Corp. of America*, 2010 WL 398979 (E.D. Ky. 2010), Gladney failed to properly exhaust this claim, and it must be dismissed.

The defendants are likewise correct that this claim is barred by the applicable statute of limitations. [R. 20, p. 21] Because the remedy afforded in a *Bivens* action is entirely judge-made, there is no statutory limitations period. Instead, federal courts apply the most analogous statute of limitations from the state where the events occurred. *Wilson v. Garcia*, 471 U.S. 261, 268-71 (1985). The hearing about which Gladney complains occurred in Kentucky, and therefore Kentucky's one-year statute of limitations for asserting personal injury claims applies. Ky. Rev. Stat. § 413.140(1)(a); *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003); *Collard v. Kentucky Board of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990).

Under federal law, a claim accrues when the plaintiff knows, or has reason to know, of the injury which forms the basis for the action. *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005). Here, Gladney should have been aware of any claim of bias when he received a copy of the DHO Report, on November 9, 2010. *Petty v. Rush*, No. 08-159-GFVT, 2010 WL 1796573, at *7 (E.D. Ky. May 4, 2010) (holding that prisoner's claim that he was wrongfully charged with fighting accrued either at time of altercation but no later than when DHO report was received). Gladney was therefore required to file suit on this claim by November 9, 2011. Because he did not file suit until February 22, 2012, his claims are time-barred, and must be dismissed. *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir. 2001).

While it is true that the running of the statute of limitations is tolled during the period

which a prisoner properly and diligently pursues his administrative remedies as required by law, no such tolling is warranted where, as here, the prisoner made no effort to file, let alone diligently pursue, an administrative remedy regarding this claim. [R. 20, pp. 22-23] *See Petty*, 2010 WL 1796573, at *7 ("the tolling of the statute of limitations is an equitable remedy which requires diligence in the pursuit of those remedies.") (*citing Miller v. Collins*, 305 F.3d 491, 495–96 (6th Cir. 2002)); *Gross v. Unknown Dir. of Bureau of Prisons*, No. 7:08-111-KKC, 2008 WL 2280094, at *3-4 (E.D. Ky. May 30, 2008).

Finally, as with his claims regarding Incident Report No. 2049412, this claim fails as a matter of law because Gladney does not make the allegation necessary to support a claim of bias that DHO Mehler was personally involved in the underlying conduct. *Speight v. Minor*, 245 F. App'x 213 (3d Cir. 2007).

### C.     Failure to Protect

Gladney's third claim contends that Unit Manager Rebecca Woods and Counselor William Wood failed to protect him from the second assault in violation of his rights under the Eighth Amendment because they were aware of Graham's hostility towards him after the first fight but nonetheless permitted Graham to be released back into the housing unit he shared with Gladney. [R. 1, p. 3]

The defendants first argue that Gladney failed to properly exhaust his administrative remedies with respect to this claim because he filed no grievance regarding it. [R. 20, p. 16] Gladney stated that "staff negligently placed the assailant and I back in the same Unit ..." for the first and only time in his Central Office appeal from WRO's denial of his appeal from Incident Report No. 2049412. [R. 20-1, p. 24] However, a prisoner's complaints regarding the conduct of staff must be filed initially at the institutional level. 28 C.F.R. § 542.14(c)(4). In addition,

Gladney's grievance would have to have been filed with the warden within twenty days after he was attacked. 28 C.F.R. § 542.14(a). Because Gladney filed his complaint regarding the failure to protect him well after the time permitted by BOP regulations and at the wrong level, he failed to properly exhaust this claim, *Arzate-Miranda v. Federal Bureau of Prisons*, 2012 WL 2308712 (E.D. Ky. June 18, 2012); *Garcia v. McArdle*, No. 4:CV-06-1533, 2008 WL 4415590, at *9 (M.D. Pa. Sept. 25, 2008), and it must be dismissed.

Defendants are likewise correct that Gladney's failure to protect claim is time barred. [R. 20, p. 21] The altercation which Gladney contends that the defendants should have prevented occurred on August 5, 2010, and the failure to protect claim accrued on that date. *Petty*, 2010 WL 1796573, at *7; *Nunez v. Federal Bureau of Prisons*, No. 7:08-CV-201, 2008 WL 5096001, at *4 (E.D. Ky. Dec. 1, 2008). Because Gladney made no effort to properly exhaust this claim, no equitable tolling is warranted. *Gross*, 2008 WL 2280094 at *3-4. Gladney was therefore required to file suit within one year, on or before August 5, 2011. *Mitchell*, 343 F.3d at 825. Because he did not file suit until February 22, 2012, this claim is time barred. *Dellis*, 257 F.3d at 511.

The defendants further contend that, even if the Court were to reach the merits of Gladney's claim, it must fail as a matter of law because neither Case Manager Rebecca Woods nor Counselor William Wood were working at the time Graham was released back into Unit 4A, and because neither had authority as members of the Unit Team to decide whether Graham should be returned. [R. 20, pp. 24-25] Each of these defendants has submitted a sworn declaration supported by documentation which indicates that (1) their respective positions as case manager and counselor do not give them any authority or role in decisions whether to release a particular inmate from the SHU back into the general population; and (2) that they were not in

any way involved in Graham's release from the SHU on the afternoon of August 5, 2010, because they were not working at the prison at the time of his release. [R. 20-3, p. 2; R. 20-2, p. 2] Because Gladney has made no effort to refute the contention of these defendants that they were not personally involved in the conduct which forms the basis for his failure to protect claim, they are entitled to judgment as a matter of law. *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003); *Green v. United States*, No. 6:11-CV-59-HRW, 2012 WL 2119332, at *2-3 (E.D. Ky. June 11, 2012).

### D. Conditions of Confinement in SHU

Gladney's fourth claim asserts that SHU Lt. Terry Baker violated his rights under the Eighth Amendment when, after he returned from the hospital for treatment, Baker placed him in a cell for three days that did not have running water, a toilet, or a bed. [R. 1, pp. 3-4]

Because Gladney did not file any proper grievance regarding these allegations, he has not exhausted his administrative remedies with respect to it. [R. 20, p. 16] Gladney stated that "[w]hile in segregation I was also subjected to cruel and unusual punishment, being placed in a cell with no running water, nor toilet, having me sleep on the floor, and would not provide medical care, or medication for pain" in his December 16, 2011, appeal to the Central Office. [R. 20-1, pp. 32-33] But as with his failure to protect claim, a complaint regarding conditions at the prison must begin by filing a Form BP-229 at the institutional level, 28 C.F.R. § 542.14(c)(4), not with the Central Office. In addition, Gladney was required to file this grievance on or before August 28, 2010, twenty days after he was released from the SHU. 28 C.F.R. § 542.14(a). Because Gladney filed his grievance regarding the sufficiency of his cell in the SHU well after the time permitted by BOP regulations, and did so at the wrong level, he failed to properly exhaust this claim. *Antonelli v. Crow*, No. 06-181-GFVT, 2012 WL 4215024, at * 5-6 (E.D. Ky.

Sept. 19, 2012); *Wilson v. Mitchell*, No. 1:10-2206-RBH-SVH, 2011 WL 1883030, at *4 (D.S.C. Apr. 18, 2011); *Cyrus v. Woneldorf*, No. 3:06-CV-1698, 2007 WL 2155694, at *7-8 (M.D. Pa. July 25, 2007) ("A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim.").

Gladney's claim regarding the conditions of his confinement in the SHU from August 5, 2010, to August 8, 2010, are also barred by the applicable statute of limitations. [R. 20, p. 21] Because Gladney was aware of the conditions of his own confinement at the time, his claims regarding them accrued no later than August 8, 2010. Because he did not file suit on or before August 8, 2011, his claims are time barred, *Antonelli*, 2012 WL 4215024, at *7, and must be dismissed. *Dellis*, 257 F.3d at 511.

### III

Accordingly, **IT IS ORDERED** that:

1. The defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment [R. 18] is **GRANTED**.

2. Gladney's complaint [R. 1, 4] is **DISMISSED WITH PREJUDICE**.

3. The Court will enter a separate judgment.

4. This matter is **STRICKEN** from the active docket.

This the 18th day of September, 2013.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge